UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL PETRIE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>JEFFREY KRUEGER Warden, )<br>)<br>Respondent. ) | No. 2:18-cv-00132-JMS-DLP |

**ORDER DENYING WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND DIRECTING ENTRY OF FINAL JUDGMENT**

Michael Petrie seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241[1]. Specifically, Mr. Petrie asserts that he is being unconstitutionally detained and imprisoned because the Parole Commission was improperly vindictive in his parole revocation hearing. For the reasons discussed in this Order, his petition for writ of habeas corpus is **denied.**

## I. Background

On August 14, 1987, the U.S. District Court for the District of Oregon sentenced Mr. Petrie to a mandatory minimum term of 15 years' imprisonment for being a felon in possession of a firearm. Dkt. 17-1 at 2-6. Mr. Petrie was released on August 29, 1996, and subject to mandatory supervision. *Id.* at 19. His supervision did not go well.

On December 11, 1996, the Commission issued a warrant charging Mr. Petrie with violating his mandatory release supervision based on new charges from an arrest on November 28, 1996, in Coos Bay, Oregon for burglary, possession of methamphetamine, being a felon in possession of a firearm, and possession of stolen property. *Id.* at 21-25. On March 12, 1997, Mr.

---

[1] At the time Mr. Petrie filed his § 2241 petition, he was incarcerated in the Federal Correctional Institute in Terre Haute, Indiana.

Petrie pleaded guilty to robbery with a firearm and being a felon in possession of a firearm in Coos County Circuit Court, Coquille, Oregon and was sentenced to a combined sentence of 204 months' imprisonment with a post-prison supervision term of 36 months. *Id.* at 26-32.

On February 12, 1998, Mr. Petrie was again convicted of being a felon in possession of a firearm after three violent felony convictions and sentenced in the U.S. District Court for the District of Oregon to 231 months' imprisonment and five years of supervised release, to run concurrently with his state sentence. *Id.* at 33-36. Mr. Petrie completed this sentence on November 16, 2014, and was then taken into custody on the Parole Commission's warrant related to his 1987 sentence. *Id.* at 23, 37-38.

On January 1, 2015, a hearing examiner conducted an institutional revocation hearing for Mr. Petrie related to his 1987 felon in possession conviction. *Id.* at 39-42. On February 5, 2015, the Commission revoked Mr. Petrie's mandatory release, did not credit any of the time Mr. Petrie spent on mandatory release, and ordered parole effective October 15, 2015, after service of 227 months. *Id.* at 43-46. On July 29, 2015, the Commission extended the parole date by 30 days, based on a Bureau of Prisons incident report indicating that a Disciplinary Hearing Officer found Mr. Petrie guilty of use of an intoxicant – alcohol. *Id.* at 47-48.

On November 24, 2015, Mr. Petrie was released from custody and subject to supervision until October 29, 2020. *Id.* at 49-52. However, on December 30, 2015, Mr. Petrie's U.S. Probation Officer requested a warrant because Mr. Petrie admitted using methamphetamine, had absconded from the Residential Reentry Center, and had failed to report to the Probation Officer as required. *Id.* at 53-55. On January 7, 2016, the Commission issued a warrant charging Mr. Petrie with use of dangerous and habit forming drugs and failure to report a change in residence. *Id.* at 56-58. The warrant was executed on March 7, 2016, and Mr. Petrie was arrested. *Id.* at 59-60.

On April 5, 2016, Mr. Petrie had a preliminary interview and signed an application for acceptance to the Short Term Intervention for Success Program (SIS), under 28 C.F.R. § 2.66(d).[2] *Id.* at 61-62 (summary of preliminary interview), 69-72 (SIS application). The Commission approved Mr. Petrie's application, and on April 25, 2016, the Commission ordered parole effective after service of 5 months (on August 6, 2016), and imposed a special drug aftercare condition that required Mr. Petrie to participate in a drug rehabilitation program if directed by his U.S. Probation Officer and approved by the Commission. *Id.* at 73-75.

Mr. Petrie was released to supervision on August 5, 2016. *See id.* at 12. However, on August 31, 2016, Mr. Petrie's supervision officer notified the Commission that on August 12, 2016, Mr. Petrie left an inpatient substance abuse treatment program without approval. *Id.* at 76-77. The officer notified the Commission that Mr. Petrie was in custody waiting for a federal supervised release revocation hearing. *Id.* at 77.

On October 17, 2016, Mr. Petrie's supervision officer notified the Commission that on October 7, 2016, Mr. Petrie had been admitted to a Residential Reentry Center at the order of the U.S. District Court, but on October 14, 2016, Mr. Petrie left the center, without permission. *Id.* at 79-80. On October 24, 2016, Mr. Petrie was arrested on the federal supervised release warrant, and was awaiting a supervised release revocation hearing. *Id.* at 82.

On November 30, 2016, the Commission issued a warrant charging Mr. Petrie with violating his drug aftercare condition and failing to report to his supervision officer. *Id.* at 83-85. The warrant was executed on March 4, 2017. *Id.* at 7.

---

[2] Short-Term Intervention for Success is a program for inmates charged with administrative violations of supervision to allow them to receive an expedited revocation decision with a sanction of 8 months or less. To be considered for the program, an alleged violator completes an application wherein he agrees to (1) accept responsibility for the administrative violations; (2) commit to modify non-compliant behavior and; (3) waive the right to a revocation hearing. If the Commission approves the SIS application, the Commission imposes a sanction of 8 months or less. 28 C.F.R. § 2.66(d).

3

At his preliminary interview on April 7, 2017, Mr. Petrie again filled out an application for the SIS program, under 28 C.F.R. § 2.66(d). *Id.* at 96-99. On June 6, 2017, however, Mr. Petrie declined the Commission's expedited revocation proposal, which would have required him to serve 12-months' imprisonment, with a parole effective date of September 1, 2017, followed by drug aftercare. *Id.* at 101. Instead, Mr. Petrie requested an in-person revocation hearing.

On August 31, 2017, a hearing examiner from the Commission conducted an institutional revocation hearing for Mr. Petrie. *Id.* at 103-105. Mr. Petrie admitted to the violations and said that he declined the expedited proposal because he had already scheduled surgery to receive a pacemaker. *Id.* at 104. Mr. Petrie's case manager told the hearing examiner that the Bureau of Prisons would need ninety days to place Mr. Petrie. *Id.* The examiner noted that Mr. Petrie could be considered a risk because this was the third parole revocation on this sentence, and his record showed 18 prior convictions and 15 prior commitments. *Id.* The examiner recommended parole effective 12/2/17 after service of 15 months, with drug aftercare and halfway house placement for up to 120 days. *Id.* at 107-108. The reviewer agreed with the examiner. *Id.*

The Commission disagreed with the examiner's recommendation. *Id.* at 109. On September 22, 2017, the Commission revoked Petrie's parole and ordered that he continue his sentence to expiration. *Id.* at 112-113. This was a decision above the guidelines range. The Commission included the following reasons for the decision above the guidelines:

> [Y]ou have 18 prior convictions and 15 prior commitments. You have a long history of violent crimes and firearm possessions and have been given the opportunity of supervision. You intentionally refused or failed to respond to any reasonable request of the Commission or supervision conditions. You were offered Short Intervention for Success program, RRC, an Expedited Revocation Officer and failed the services. The USPO stated, 'you were offered numerous community resources but failed to comply with housing and treatment service.' Because of your prior poor supervision performance, the USPO [sic] does not believe you are currently amenable to supervision. The USPC also finds based on your criminal

4

> history along with your history of supervision that there is a reasonable possibility that you will violate a federal, state, or local law if released.

*Id*.

Mr. Petrie filed an administrative appeal of the decision raising the following claims: "(1) a decision outside of the guidelines was not supported by the reasons or facts stated in the Notice of Action; (2) there are especially mitigating circumstance in your case which justify a different decision; and (3) the sanction was vindictive in violation of the Fifth Amendment's Due Process Clause." *Id.* at 116-120. The National Appeals Board found no merit in Mr. Petrie's claims and affirmed the decision. *Id.* at 133-134. The Board pointed out that the Commission considered the entire record, including the circumstances Mr. Petrie identified as mitigating circumstances. The Board found that the Commission provided a sufficient factual basis for its finding that Mr. Petrie was not amenable to supervision and that there was a reasonable probability that Mr. Petrie would reoffend. Finally, the Board determined that there was no evidence of vindictiveness because the Commission articulated sufficient reasons to support the decision and "the expedited revocation offer clearly explains that the Commission's decision after a revocation hearing may be less favorable to you than the expedited revocation offer and that a decision to decline an expedited offer will have no bearing on the Commission's decision after the revocation hearing." *Id*.

## II. Standard of Review

"Since Congress has delegated sole discretionary authority to grant or deny parole to the Commission, absent a procedural or legal error, judicial review of Parole Commission action is limited to determining whether the Commission action was arbitrary or capricious." *Pulver v. Brennan*, 912 F.2d 894, 896 (7th Cir. 1990). In evaluating the Commission's decision, "[a] court of review need only determine whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons. … [T]he inquiry is only whether there is a rational basis

5

in the record for the Commission's conclusions." *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982); *see also Kramer v. Jenkins*, 803 F.2d 896, 901 (7th Cir. 1986) ("Our review … is confined to the record before the Commission and limited to a search for 'some evidence' in support of the decision.").

The Commission is permitted to render a decision above the applicable guideline range for "good cause," so long as the prisoner is provided "with particularity the reasons for [the] determination, including a summary of the information relied upon." 18 U.S.C. § 4206(c); 28 C.F.R. § 2.20(c) & (d). "Good cause" has been defined by Congress as reasons set forth by the Parole Commission in good faith which are not "arbitrary, irrational, unreasonable, irrelevant, or capricious." *Solomon*, 676 F.2d at 287. Whether the substantive circumstances identified in the Commission's statement of good cause warrant a decision above the guidelines, *i.e.*, whether they may be reasonably considered to be "aggravating factors," is a judgment committed to the Commission's discretion. 18 U.S.C. § 4218(d). A parole decision has been described as "subtle and (one which) depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by Board members." *Solomon*, 676 F.2d at 287 (citing *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 10 (1979)). Because "[t]he Commission's decisions are not reviewable under the Administrative Procedure Act," a petitioner "must show that his continued custody is a violation of the Constitution." *Turner v. Henman*, 829 F.2d 612, 614 (7th Cir. 1987) (internal citations omitted).

### III. Discussion

As the Court previously noted, absent a constitutional violation, its review of the Commission's decision is limited to determining whether the decision was supported by a rational basis. Mr. Petrie alleges that the Commission's decision to impose a harsher sanction after he

turned down their expedited revocation proposal was vindictive in violation of his constitutional due process rights. Dkt. 16 at 4 (citing *U.S. v. Jarrett*[3], 447 F.3d 520, 525 (7th Cir. 2006)). The respondent argues that the Parole Commission acted within its discretion and had good cause for its decision. Dkt. 17 at 7-10. The respondent further asserts that the decision was not vindictive. *Id.* at 11-14. In reply, Mr. Petrie argues that an evidentiary hearing is necessary to resolve whether the Commission's decision was vindictive, which Mr. Petrie argues is a factual dispute. Dkt. 18.

Vindictiveness is prohibited on resentencing -- a sentencing judge may not impose "a more severe sentence" than was first imposed based on "vindictiveness against a defendant for having successfully attacked his first conviction." *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). A presumption of vindictiveness applies where a new sentence is harsher than the original sentence. *Id.* at 726. The presumption may be rebutted "by objective information in the record justifying the increased sentence." *Wasman v. United States*, 468 U.S. 559, 568 (1984). The presumption does not apply unless there is a "reasonable likelihood" that the more severe sentence was motivated by actual vindictiveness by the sentencing court. *Alabama v. Smith*, 490 U.S. 794, 799 (1989). "The classic instance triggering the presumption is the one in which the same judge tries and sentences a person for a second time after he has succeeded in having his original conviction reversed." *United States v. Warda*, 285 F.3d 573, 580 (7th Cir. 2002) (citing *Pearce*, 395 U.S. at 725-26); *see also Kindred v. Spears*, 894 F.2d 1477, 1480 (5th Cir. 1990) ("Absent a triggering event, the court will not presume vindictiveness."); *Bono v. Benov*, 197 F.3d 409, 416 (9th Cir. 1999) ("Pearce presumption does not apply where a harsher sentence received after a successful appellate challenge is not issued in response to the reversal by a higher authority."); *Weaver v. Maass*, 53 F.3d 956, 960 (9th

---

[3] *Jarrett* is inapposite as it relates to prosecutorial vindictiveness –a prosecutor should not bring a case motivated by some form of prosecutorial animus. *Jarrett*, 447 F.3d at 525.

Cir. 1995) (finding parole increase to be response to state court decisions in other cases, rather than motivated by appellate reversal).

The Court agrees with the respondent that the presumption of vindictiveness does not arise in this case because there was no "reversal" in decision, much less a reversal by a higher authority. Although the Commission had presented an expedited revocation proposal to Mr. Petrie with a lesser sanction, Mr. Petrie rejected that proposal – such a rejection is no different than if Mr. Petrie had rejected a plea offer. *Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 719 (7th Cir. 2013) (a "fundamental principle of contract law dictates that an offer, once rejected, no longer exists.") (citing *Minneapolis & St. Louis Ry. Co. v. Columbus Rolling-Mill Co.*, 119 U.S. 149, 151 (1886)). Moreover, according to Commission policy, when a parole violator declines a proposal, "the proposed decision shall be null and void, a revocation proposal as offered by the Commission, and the Commission may thereafter take any action that it might have originally taken had the case not been considered under the expedited revocation procedure." U.S. Parole Commission Rules and Procedures Manual, § 2.66-01(f), p. 178 (June 30, 2010) (available at https://www.justice.gov/sites/default/files/uspc/legacy/2011/12/30/uspcmanual111507).

In rejecting the proposal, Mr. Petrie selected the option on the pre-printed Commission form to request an in-person revocation hearing. No presumption of vindictiveness will attach where the Commission invited Mr. Petrie to request an in-person revocation hearing.

In this case, vindictiveness is a legal, and not a factual, inquiry, and no evidentiary hearing is necessary. *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016) (an evidentiary hearing is "not required when the files and records of the case conclusively show that the prisoner is entitled to no relief.").

As to the Commission's September 22, 2017, decision regarding Mr. Petrie's parole, the Court agrees that the Commission's decision provided a thorough explanation of its reasons and good cause for its decision to go beyond the guidelines. Specifically, the Commission noted that a departure was warranted because: (1) Mr. Petrie had already violated his parole three times such that this was his third revocation, (2) he had 18 prior convictions and 15 prior commitments, (3) he had a long history of violent crimes and firearm possession, (4) he intentionally refused or failed to respond to reasonable requests from the Commission, (5) he had previously been offered the SIS program, RRC, and a prior expedited revocation offer, but failed to comply; and (6) he was offered numerous community resources, but failed to comply. In short, the Commission felt that based on his prior poor supervision performance, Mr. Petrie would not be amenable to future supervision. Dkt. 17-1 at 112-113.

## IV. Conclusion

Because the Commission's actions with regard to Mr. Petrie's parole were not arbitrary or capricious, Mr. Petrie's § 2241 petition is **denied.**

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 1/30/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Mario Garcia
BRATTAIN MINNIX GARCIA
mario@bmgindy.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov